POWERS ET UX. *v.* HOUSE ET UX.

[No. 178, October Term, 1951.]

*Decided May 9, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*James B. Lyons, Jr.* for appellants.

*John M. Baumann,* with whom was *Melvin J. Sykes,* on the brief, for appellees.

MARBURY, C. J., delivered the opinion of the Court.

The appellants as vendors, and the appellees as vendees, entered into a contract on August 10, 1950, for the sale of a house on the property known as 4703 Crosswood Avenue. The purchase price was $11,000, subject to a $90 ground rent. $1,000 was paid on the date of signing the contract, a further payment of $4,000 was to be made on or before August 15, 1950, a credit of $200 was to be allowed, and the balance of the purchase price of $5,800 was to be paid in cash at the time of settlement. The contract also contains a clause stating: "Settlement to be within 30 days of completion of house and house to be completed on or about October 1st, 1950." At the time of the making of the contract, the house was under construction.

The appellees paid the $4,000 payment, but, according to their testimony, the property was never completed, and, sometime in February, 1951, they were told by Powers that he would get in touch with them after two other parties who were buying similar houses from him had moved in. Then, on May 3, 1951, Powers wrote a letter to the appellees stating that the house had been completed for five months, he had personally notified them on numerous occasions that it was completed, and had requested that they settle. The letter concluded: "Due to your failure to settle, I now conclude that you have broken your contract, that the contract is void and is no longer in effect." The appellees testified that they were constantly after Mr. Powers to have the property ready. He first said they would be in by Thanksgiving, and then, they would be in by Christmas, and, again, he promised it to them in January and February. The house was practically finished sometime between February and March, but the street was not paved, according to the appellees, until the last part of May. The street paving was by an agreement with the City, made only on February 20, and Powers put up his part of the money on March 27. Powers said the street pavement was done in April. The ground rents were not created

until March 13, 1951. The sidewalks were put in in fall, but the winter freeze broke them up, and they were put back in March and April. The sodding of the entire lot, which was part of the vendors' obligation under the contract, was not done until the spring, April, May or June. The house itself was never completely constructed, although most of the work on it was done by late November or early December, 1950.

On June 4, 1951, the appellees filed a bill for specific performance in the Circuit Court of Baltimore City. After testimony had been taken, the court entered a decree specifically enforcing the contract, and allowing the appellees $187 out of the purchase price to cover certain matters which had not been completed. From that decree, the appeal comes here.

The testimony showed that there was a loan to the Baltimore Federal Savings and Loan Association of $8,500 against the property, so that if settlement had been made as early as March 15, the Powers would have had to add $2,700 to the amount the appellees were to pay, in order to give them a deed. On the date on which the letter was written to the appellees, attempting to cancel the contract, there was a balance due on the loan of $7,033.32, so that the Powers would then have had to put up $1,232 in order to settle. Since the Powers had no equity in the property, and since it would have cost them considerable money to have settled, it can readily be seen why it was to their interest not to carry out their contract. The chancellor noted this situation in connection with the testimony of Mr. Powers that he was constantly after the appellees, and the testimony of Mrs. House that she was constantly after him to complete the house and let the appellees get in. The chancellor evidently did not believe Mr. Powers on this point.

The contract contained no provision showing that time is of the essence, but whether it did or not, the settlement was not to be made until thirty days after the completion of the house. Completion of the house, under the contract, must have meant putting the prop-

erty in a condition where the purchasers could occupy it. The property was not sodded, the sidewalks were not laid, the pavement was not put in, and, until these things were done, the house was an island in a sea of mud. The purchaser of the house down the street at the corner made her settlement on the 15th of March. She said the moving man was not able to get up to her house, had to go down an alley-way, and got stuck up to his axles. It is apparent that the property the appellees were purchasing was not ready for occupancy until sometime in the spring of 1951, and that Powers, instead of notifying the appellees when he thought it was completed, sent them, without any warning, the letter of May 3, attempting to cancel the contract. When he did not complete the house by the October completion date mentioned in the contract, he could not, even if he had completed it at a later date, then rescind his contract without any notice to the appellees that he was ready to deliver the property. It is quite clear from the evidence that he did not want to carry out the contract, for the obvious reason that to do so would cost him something.

This case involves no question of law. It is preeminently the kind of situation where, if we had any doubt about the facts, we would accept the findings of the chancellor, who heard the testimony and saw the witnesses. We have no doubt, however, on the facts as shown in the record, that the decision of the chancellor was correct. The decree will, therefore, be affirmed.

*Decree affirmed with costs.*