GOSS ᴇᴛ ᴜx. *v.* HILL

[No. 169, September Term, 1958.]

*Decided March 17, 1959.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and DIGGES, J., Associate Judge of the Seventh Judicial Circuit, specially assigned.

*William F. Hickey* for the appellants.

*Paul T. Sisson*, with whom were *William B. Wheeler* and *Jerome E. Korpeck* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The plaintiffs below filed an action at law, wherein they requested a declaration of rights concerning a $500 deposit which had been made on a real estate sales agreement and was supposedly held by the defendant as the broker involved in the transaction. The defendant, the real estate broker, answered to the effect that she had returned the $500 deposit to the prospective purchaser under the sales agreement, and she filed a counter-claim against the plaintiffs, the sellers, for her broker's commission. The trial court held that he could not grant the declaratory relief requested, and that the broker was entitled to her commission.

The facts disclose an unusual series of events under a contract for the sale of realty. The agreement was executed in June, 1955. It recognized the broker as the sellers' agent and stated the whole deposit was to be retained by the broker until settlement. If the purchaser failed to perform, the deposit was to be forfeited. On the agreed-upon date of settlement, September 13, 1955, the sellers executed and delivered a deed to the settlement company. The purchaser appeared at the place of settlement much later than the designated time, but refused to go through with the contract. About a month later, the sellers wrote a letter to the purchaser's lawyer in which they stated that the contract was executed under a mutual mistake of fact as to the quantity of land owned by the sellers, which vitiated the contract; hence, they were instructing the broker to return the deposit and the escrow agency to close its file on the matter. The purchaser refused to accept the return of the deposit and in December of 1955 instituted suit against the sellers for specific performance. The litigation consumed considerable time, and in May, 1957, the court dismissed the purchaser's suit.

As soon as the equity suit was over, the broker contacted one of the sellers, Earle D. Goss, who handled the entire matter on behalf of the sellers, with reference to the disposi-

tion to be made of the deposit. She informed him that she felt the deposit had been forfeited, and requested a letter from him to that effect. He stated that he felt they should wait until the appeal period in the equity suit expired, and he would call her later in connection with the deposit. This he did in early July. She again requested a letter from him declaring that the deposit had been forfeited. He stated that he would give her such a letter, but demanded to know "what was the usual split." She informed him that in accordance with the terms of the contract, her commission could not exceed $500. He stated that he thought it was the "general policy" under such circumstances for the real estate broker and the seller "to split fifty-fifty" the forfeited deposit; and, unless she agreed to such an arrangement, it would be best to let the courts decide what should be done with the $500.

In the meantime, the broker was being constantly pressed by the purchaser for a return of the deposit to him. On August 1, 1957, she wrote to the sellers demanding payment of her commission; on August 8, she returned the deposit to the purchaser; and on August 10, the sellers wrote the broker and demanded the full deposit for themselves. The broker admits that the sellers did not, at anytime during or after the conversations in July, 1957, direct her to return the deposit to the purchaser.

There is no doubt that the trial court was correct in holding that it could not grant declaratory relief. The only relief requested was an "appropriate order through a declaratory judgment as to the proper disposition of the $500.00 *now being held by the defendant.*" The answer denied that the defendant had the $500, but the plaintiff made no effort to amend or to add additional parties; consequently, when the court found that the defendant no longer held the deposit, there was nothing it could do, except deny the declaration requested: it would have been futile to make a declaration concerning a non-existent fund.

The contract specifically provided that the sellers "agree to pay commission as agreed upon * * *, *same to be due and payable upon the signing of this contract";* therefore, Code (1957), Article 2, Section 17 has no bearing on the decision

of this case. (Emphasis supplied.) The broker, being entitled to her commission upon the signing of the contract and never having been paid, is still entitled to it unless she has waived her right thereto or estopped herself from asserting the claim.

When the broker and the seller, Goss, were discussing the disposition of the deposit in July, 1957, the situation between them was this. The broker held $500 that she had received on behalf of the sellers as a part payment of the purchase price under a contract of sale. The contract of sale provided that she should hold the same until "settlement hereunder is made" and that it would be "forfeited" if the purchaser failed to make settlement in accordance with the terms of the agreement, and, in that event, the commission would not exceed the deposit. The termination of the specific performance suit showed that there would be no "settlement" under the contract, because of a failure of the purchaser to make settlement in accordance with the agreement.[1] This rendered the broker the holder of a forfeited deposit made by the purchaser, with a commission due her from the sellers in an amount equal to the deposit.

The seller, Goss, was definitely in error when he demanded that the broker split her commission with him, and he probably did not exercise the best of judgment in refusing to give her a letter formally declaring the deposit forfeited. However, his conduct was not such as to excuse the broker, the sellers' agent, from discharging her duty to her principals of acting in accordance with usual customs, and in the absence of usual customs, to use good faith and discretion. Restatement, *Agency 2d,* Section 383 (a). In the case at bar, the broker, the sellers' agent, deliberately returned to the purchaser a forfeited deposit without any instruction from the sellers to do so. In addition, the broker knew that the sellers

---

1. Although the purchaser was the plaintiff in the specific performance suit, the court decided against him on the ground that he was not "ready, desirous, prompt and eager" in the performance of his agreement, at the time mentioned in the agreement for him to perform.

were claiming (although erroneously) a portion of the deposit, without liability for the broker's commission. This conduct on the part of the broker was most unusual and cannot be sustained as an exercise of good faith and discretion. The Restatement, *Agency 2d,* Section 402 (1) (e), states, "[a]n agent is subject to liability to the principal for the value of * * * money which he holds for the principal and to the immediate possession of which the principal is entitled * * * if the agent * * * makes delivery of it to a person to whom he is not authorized to deliver it * * *." We cite the above to emphasize the unusual conduct of the broker in returning to the purchaser the very fund out of which she could have collected her commission, and, yet demanding that the sellers pay the same.

We reach the conclusion, as did the Court in *Huttlinger v. Far West Enterprises,* 281 P. 2d 554 (Cal., 1955), that the broker's returning of the deposit to the purchaser constituted a waiver of her right to demand her commission from the sellers. In the case just referred to, a broker sued to recover commissions on a real estate transaction. The deposit receipt and the agreement for sale provided that upon forfeit by purchaser, one-half of the deposit was to constitute the broker's commission. The deposit and other money were placed in escrow. The prospective purchaser had difficulty in raising the funds required by the agreement. The broker informed the seller, and the broker tried to effectuate a sale of the property by bringing in additional parties as purchasers. As a result of the original purchaser's being unable to raise the funds required of him, both transactions fell through. During the negotiations, the broker consented to the return of the original deposit money, that had been placed in escrow, to the purchaser named in the agreement. The Court stated that waiver has been repeatedly defined as the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right and may result from an express agreement or be inferred from circumstances indicating an intent to waive, and held that the broker, by consenting to and urging the return of the deposit, had waived his right to his commission.

310

The appellants seek to have us pass upon the admissibility, *vel non,* of certain evidence, but they failed to include the same in the record extract. The objections were not well taken and we shall not set them out in full as they are not properly before us. Maryland Rule 828 b 1 (b). *McBurnie v. McBurnie,* 214 Md. 210, 134 A. 2d 78.

> *Judgment of August 26, 1958, in favor of Karla Hill for costs affirmed; judgment of August 26, 1958, in favor of Karla Hill for $500 reversed; appellants and appellee each to pay one-half of the costs.*