## COHEN ET AL. *v.* DUCLOS

[No. 287, September Term, 1973.]

*Decided June 20, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Jerry L. Shulman,* with whom were *Williams, Connolly & Califano* and *Edward J. McGrath* on the brief, for appellants.

*Arthur L. Willcher* for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

Unlike the typical real estate brokerage commission case to reach us, where the broker claims a commission from the prospective seller of property, in this case the broker's demand is upon the prospective buyer. The events leading up to the dispute were stipulated in the court below.

On February 25, 1971, the plaintiff-appellee Paul J. Duclos, a real estate broker, entered into a sales contract

with David Peebles, Jr., personal representative of the estate of David Peebles, for the purchase of an apartment house. Under this contract, Duclos was both the buyer and broker, and was to be paid a 5% commission by Peebles. A short time thereafter, Duclos interested a third party in the property, defendant-appellant Ronald J. Cohen, who agreed to buy the property directly from Peebles under a new contract, with Duclos acting as broker. To implement this arrangement Duclos and Peebles, on March 25, 1971, entered into an agreement terminating their sales contract, and on the same day Peebles and Cohen executed a contract of sale for the real estate.[1]

The Peebles-Cohen contract provided for settlement "no later than June 15, 1971." It also contained the following provisions:

> "RECEIVED FROM Ronald J. Cohen or his assigns a deposit of FIVE THOUSAND and no/100 — ($5,000.00) to be applied as part payment . . . upon the following terms of sale:
>
> \* \* \*
>
> "The property is sold free of encumbrance except as aforesaid; title is to be good of record and in fact . . .; otherwise said deposit is to be returned and sale declared off at the option of the purchaser . . . . In case legal steps are necessary to perfect the title, such action must be taken by the seller promptly at his own expense, whereupon the time herein specified for full settlement by the purchaser will thereby be extended for the period necessary for such prompt action.
>
> . \* \* \*
>
> "In the event of the forfeiture of the deposit, the seller shall allow the agent one-half thereof as a compensation for his services to him."

---

1. Cohen apparently was acting on behalf of Cohen-Meisel Associates, a partnership comprised of himself and one Joel Meisel.

Duclos was a signatory to this agreement and was to receive his commission, $20,900.00, from Cohen "by the execution of a Second Deed of Trust secured on subject property . . . [s]aid note to be for two (2) years, payable interest only at 8% . . . ." The sales agreement provided, in the alternative, that Peebles would be responsible for the brokerage commission if the title proved defective.

On several occasions prior to the scheduled settlement date of June 15, 1971, Cohen was informed by the title company that it would not insure that the property was free of encumbrances or that the title was good of record. On May 18, 1971, a federal tax lien of $992,000.00 was placed on the property. On June 15 Cohen appeared at the office of the title company to make settlement as agreed but was then informed that Peebles still could not convey good title because of the federal tax lien. Neither Peebles nor Duclos appeared at the scheduled settlement, and after waiting one hour Cohen departed. On October 5, 1971, almost four months after the scheduled settlement date, Cohen notified the title company that he was rescinding the contract, and pursuant to Cohen's request the title company returned to him the $5,000.00 deposit.

The next day, October 6, 1971, Peebles advised Cohen by letter that he was "now in a position to go to settlement" and that the requirements of the title company for the passage of good title had been met. Peebles requested that a settlement be arranged within thirty days. Whether or not Cohen replied to this letter is not set forth in the record. In any event, settlement between Peebles and Cohen did not take place, and Duclos demanded payment of his commission from both Peebles and Cohen, respectively, under the terms of the March 25, 1971 agreement. Neither party paid a commission to Duclos. Undaunted, the appellee broker arranged a sale of the Peebles property to an unrelated third party (the Jelniker family) on the same terms as the Peebles-Cohen contract. At settlement of the Jelniker contract, on December 31, 1971, Duclos received a commission of $20,900.00. Two months later Duclos again demanded payment from Cohen of a $20,900.00 commission.

Duclos then instituted suit in the Circuit Court for Montgomery County against Cohen and Meisel to recover the claimed commission. The trial court (Rutledge, J.), deciding the case upon an agreed statement of facts, concluded that Duclos was entitled to a commission under the provisions of Maryland Code (1957, 1973 Repl. Vol.), Art. 21, § 14-105. That statute provides (emphasis supplied):

"Whenever, *in the absence of special agreement to the contrary,* a real estate broker employed to sell, buy, lease or otherwise negotiate real or leasehold estates or mortgages, or loans thereon, procures in good faith a purchaser, seller, lessor or lessee, mortgagor or mortgagee, borrower or lender, as the case may be, and the person so procured is accepted as such by the employer, and enters into a *valid, binding and enforceable* written contract of sale, purchase, lease, mortgage, loan or other contract, as the case may be, in terms acceptable to the employer, and such contract is accepted by the employer and signed by him, the broker shall be deemed to have earned the customary or agreed commission, as the case may be, whether or not the contract entered into be actually performed, unless the performance of such contract be prevented, hindered or delayed by any act of the broker."

Appellants argued in the trial court, and on appeal, that the facts reveal "a special agreement to the contrary" making Art. 21, § 14-105 inapplicable in the instant case. Appellants urge that under the "special agreement" the broker's entitlement to a commission from the purchasers was conditioned upon settlement taking place. We agree and accordingly reverse.

By the terms of the contract of sale, which was also the commission agreement as it was signed by the broker, the buyers were to pay Duclos his commission by giving him a note secured by a second deed of trust on the subject property. Of course the purchasers could only use the realty

as security for the note if they became the owners of the property. Consequently, Duclos must have anticipated that he would get his commission from the purchasers only in the event of actual settlement and passage of title to the purchasers. The agreement also provided for the seller Peebles to pay the brokerage commission if the title proved defective. The import of such a provision buttresses the conclusion that Cohen and Meisel would only be liable for the commission if the sale were consummated. Finally, the sales agreement provided that if the purchasers defaulted and the deposit were therefore forfeited, the broker would receive one-half of the deposit "as a compensation for his services."

Taking these provisions as a whole, it seems clear that the parties intended the purchasers to pay the broker's full commission only upon consummation of the sale. If the sale were not consummated because of the seller's default in not being able to convey good title, then the seller would be liable for the commission. If the sale were not consummated because of the purchasers' default, the broker was to receive one-half of the forfeited $5,000.00 deposit. What was said by our predecessors in *Chasanow v. Willcox*, 220 Md. 171, 176, 151 A. 2d 748 (1959), concerning similar "substitutional provisions," is quite apposite here:

> "But the statute [Art. 21, § 14-105] is applicable only 'in the absence of a special agreement to the contrary,' and, in this case, there were two special agreements, one of which was a substitute for the other. There was an agreement that the seller would pay the broker a commission *to be deducted from the proceeds of sale.* However, in the event the purchaser should default it was understood that the seller would allow the broker *one-half of the deposit* as compensation for his services to the seller. Since these are substitutional provisions, affecting the time of payment, source and amount of the compensation to which the broker would be entitled, the statute has no bearing on a decision of this case."

*See also W. C. Pinkard & Co. v. Castlewood Realty Co.*, 271 Md. 598, 319 A. 2d 123 (1974); *Snider Bros. v. Heft*, 2?1 Md. 409, 416, 317 A. 2d 848 (1974); *Prince George's Club v. Carr*, 235 Md. 591, 603, 202 A. 2d 354 (1964); *Goss v. Hill*, 219 Md. 304, 307-308, 149 A. 2d 10 (1959).

The broker argues, and the trial court seemed alternatively to hold, that even if the agreement provided that settlement was a condition to the broker's right to a commission from the purchasers, the purchasers' default prevented the settlement, and the purchasers "cannot set up [their] wrongful act as a defense to a claim by the broker." Leaving aside for present purposes the provision indicating that in the event of the purchasers' default the broker's compensation should be one-half of the forfeited deposit, and assuming *arguendo* that if settlement were prevented by the purchasers' default or wrongful act, the broker would be entitled to his full commission from the purchasers, the stipulated facts cannot support a finding that the purchasers' default or wrongful act prevented settlement.

The sales contract specified that the property was to be sold "free of encumbrance" and that "title is to be good of record . . .; otherwise said deposit is to be returned and sale declared off at the option of the purchaser . . . ." Under these provisions, if the seller could not convey the property "free of encumbrance" with title "good of record" on the June 15, 1971 settlement date, the sale could properly be "declared off" at the purchasers' option. The only exception to this was "in case legal steps are necessary to perfect title." In that event, the contract provided that "such action must be taken . . . promptly" and that the purchaser will extend the settlement date "for the period necessary for such prompt action." It is doubtful that payment or settlement of the Internal Revenue Service's federal estate tax claim, which resulted in a lien being placed on the property, constituted the taking of "legal steps . . . necessary to perfect title." However, assuming that it did, the result would be no different. The agreement was that the seller would take action "promptly" and that the purchasers would extend the settlement date only for the time "necessary for such

prompt action." It was conceded that no request was made to the purchasers to grant an extension of the settlement date. Nevertheless, they waited almost four months from the settlement date before exercising their option to have the sale "declared off," and five months from the time of the tax lien, for the seller to satisfy the tax claim. The period given to the seller was obviously sufficient to constitute an extension "necessary for . . . prompt action." Under the facts of this case, there is no basis for concluding that the purchasers' "default" or "wrongful act" frustrated the settlement.[2]

*Judgment reversed.*

*Appellee to pay costs.*

---

2. The appellants make two other arguments for reversal of the judgment. They claim that the phrase in Art. 21, § 14-105, that the contract of sale must be "valid, binding and enforceable" in order to entitle a broker to his commission upon the mere signing of the contract, requires that the broker produce a customer "ready, willing and able" to buy or sell, as the case may be, on the principal's terms, and that the seller in this case was not "ready, willing and able." The appellants also maintain that the broker's receipt of a full commission based upon the sale of the subject property to someone else, precludes under the circumstances of this case the broker's recovery of a second commission from them. Because of our holding that the parties entered into a "special agreement" as to when the broker was entitled to his commission, we do not reach these alternative arguments.