## CASEY *v.* JONES

[No. 183, September Term, 1974.]

*Decided June 11, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Thomas B. Yewell,* with whom were *Haislip & Yewell* on the brief, for appellant.

No brief filed on behalf of appellee.

DIGGES, J., delivered the opinion of the Court.

In this suit, brought in the Circuit Court for Prince George's County, Mike Casey, the real estate broker and the appellant here, seeks to obtain full payment for a check, out of which amount his land sales commission was to be

deducted, from Nathan Jones, the defaulting purchaser and appellee, who deposited the draft with him but subsequently refused to honor it. Following a hearing, the trial judge, William B. Bowie, sitting without a jury, denied the broker the remedy he requested and entered a judgment for costs in favor of the appellee. We will affirm that judgment.

In the fall of 1973, Norman Cohen and his brother were desirous of selling their property situated on the George Palmer Highway in East Columbia Park, Prince George's County, Maryland. Toward that objective, a real estate salesman employed by the appellant's brokerage firm [1] introduced Jones to the sellers as a prospective purchaser of their land, which presentation eventually resulted in the execution of a contract for the sale of the Cohen property to Jones. As required by this agreement, the buyer provided the broker with a $5,000 deposit in the form of a check payable to Casey, which was to be retained by him until settlement and then, at that time, was "to be applied as part payment" of the $90,000 purchase price.

From this point on, as with some of "the best laid schemes o' mice and men," [2] things began to fall apart. The event which directly precipitated this dispute occurred a few weeks prior to the day of the scheduled settlement when Casey presented Jones' deposit check to the bank for payment, only to have it returned because the drawer lacked sufficient funds in his bank account to honor it. Undeterred, Casey continued to pursue Jones for the deposit money; but the appellee refused to make good on the obligation evidenced by the check because, the buyer maintained, not only was he impecunious at that point (as a result of failing to sell his own land which he had hoped would supply the necessary capital for him to purchase the Cohens' property), but he also had become disenchanted with the deal altogether after discovering that the actual land area about to be conveyed to him was considerably less than he had

---

1. The broker Mike Casey trades as the real estate brokerage firm of Mike Casey Realty, Inc.

2. *Robert Burns, To a Mouse*, stanza 7 (1785).

been led to believe was to be contained in the bargain. Thus, desiring to secure his broker's commission, which he concluded would have to be obtained from the $5,000 deposit, Casey brought this suit against the recalcitrant purchaser.

The reason why the broker cannot succeed in this case can be found in the sales contract. By the terms of that agreement, the entire $5,000 earnest money deposit was to "be held by [the] broker until settlement [under the contract] is made[, at which time] . . . the party making settlement is . . . directed to deduct the [6%] commission from the proceeds of the sale and pay same to said Agent." Since, as the broker recognizes, the purchaser refused to consummate the transaction, the appellant's entitlement to a full commission, under this contract provision, did not accrue. The sales contract also addresses itself to the rights of the sellers as well as the broker in the event of an unjustifiable default by the purchaser. In this regard the agreement provides:

> "If the Purchaser shall fail to make full settlement, the deposit herein provided for may be forfeited at the option of the Seller, in which event the Purchaser shall be relieved from further liability hereunder unless the Seller notified the Purchaser and the Agent(s) in writing within 30 days from the date scheduled for settlement of his election to avail himself of any legal or equitable rights, other than the said forfeiture, which he may have under this contract. In the event of the forfeiture of the deposit, the Seller shall allow the Agent(s) one-half thereof as a compensation for his services, said amount not to exceed the amount of the full brokerage fee."

With this contract provision the sellers had available to them, at the time of the buyer's default, an election among remedies. They could exercise their "option" to "forfeit" the deposit being held by the broker, in which event the contract purchaser would be relieved from further liability under the agreement; or the sellers could utilize "any of the legal or

equitable rights, other than ... forfeiture" available to them, provided they notify the purchaser and the broker of this election "in writing within 30 days from the date scheduled for settlement."

Since this latter election was not made by the sellers within the thirty-day period provided for in the contract, asserting rights to the deposit by virtue of forfeiture is the only means even potentially available to the broker at this point. However, under the terms of this contract, before the appellant, or the sellers for that matter, can establish complete ownership of whatever had been deposited — in this case, as it turns out, a chose in action for $5,000 — the Cohens, being the sellers, must as a condition precedent declare a forfeiture. In other words, until the sellers actually forfeit the deposit, the contract vendors or their agent have no ownership in, as distinguished from the right of possession of, the $5,000 check (or its proceeds if cashed), much less a Maryland Commercial Code suit for its payment,[3] as seems to be necessary in this case, because the mere default or breach by the purchaser does not of itself, operate as a forfeiture. *Chasanow v. Willcox*, 220 Md. 171, 151 A. 2d 748 (1959); *Powers v. House*, 200 Md. 229, 88 A. 2d 555 (1952); *Meinecke v. Goedeke*, 195 Md. 373, 73 A. 2d 445 (1950). This principle was definitively settled for this Court by Judge Horney in *Chasanow v. Willcox, supra* at 177-78:

> "If, when he defaulted, the seller had notified the purchaser of his intent to forfeit the deposit and had thereafter done so as the broker had requested the seller to do, there is no doubt that the seller could have kept the deposit as liquidated damages under the terms of the contract, and the purchaser's right to a refund of the deposit would have terminated. See *Spellman v. Dundalk Co.*, 164 Md. 465, 165 A. 192 (1933); Annotation, 31 A.L.R.2d 8, 37 (1953); 91 C.J.S., *Vendor and Purchaser*, § 139

---

**3.** The appropriate section authorizing this suit is Maryland Code (1957, 1964 Repl. Vol.) Art. 95B, § 3-122 (3). However, effective 1 July 1975 this section will be codified as Code (1975) Commercial Law Article, § 3-122 (3).

b(1). See also *Asher v. Hull,* 207 Okla. 478, 250 P. 2d 866 (1952). But when the seller — or his broker for him — retains the deposit without forfeiting it ..., the mere retention of the deposit does not amount to an election to forfeit it. See *Sheffield v. Paul T. Stone, Inc.,* 98 F. 2d 250 (C.A.D.C. 1938). Cf. *Barnette v. Sayers,* 53 App. D.C. 169, 289 Fed. 567 (1923)."

Since, in this case, there has been no forfeiture by the sellers of the deposit (now in the form of a chose in action), Casey has no such recognizable interest as to entitle him to maintain this suit on the check. While having no direct bearing on the issue presented to us for decision here, we note that if it is true, as the trial judge found, that the property was resold for an amount in excess of that which Jones agreed to pay, a few months after settlement was to take place with the appellee, it is arguable that at this date it is too late for a forfeiture — a matter which we need not decide. See *Chasanow v. Willcox, supra.*

> *Judgment of the Circuit Court for*
> *Prince George's County affirmed.*
> *Appellant to pay the costs.*