# CHAS. H. STEFFEY, INCORPORATED *v.* DERR

[No. 203, September Term, 1974.]

*Decided June 2, 1975.*

*Motion for rehearing filed July 2, 1975; denied July 3, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*William L. Balfour* and *Thomas D. Washburne,* with whom was *John H. West, III,* on the brief, for appellant.

*Bernard F. Goldberg* for appellee.

LEVINE, J., delivered the opinion of the Court.

Again, we are confronted with a dispute over the payment of a real estate commission. Here, Chas. H. Steffey, Incorporated (the broker) appeals from a decision denying its claim against Ruth W. Derr (the owner) rendered at the conclusion of a non-jury trial in the Circuit Court for Howard County (Mayfield, J.).

On December 7, 1970, these parties entered into a listing agreement whereby the owner employed the broker for a period of six months to produce a purchaser for her real property, including the mobile home village (motel-hotel, apartment and trailer park) which she operated thereon. The following provision appears in the agreement:

> "If a deposit made on any contract of sale shall be forfeited, the commission for the Realtor's services shall be one-half of the amount forfeited, but in no event to exceed an amount equal to the full commission specified herein."

Pursuant to the listing agreement, the broker did produce a buyer, Harry K. Stueber and Lillian B. Steuber (the purchasers), who agreed to pay the sum of $205,000 for the property. The contract of sale, executed on April 16, 1971, is atypical in its appearance if only because in this case it is not cast in the boiler-plate language of the printed forms commonly used in such transactions; instead, it is a typewritten instrument tailored, for the most part, to this particular sale. The owner agrees to "pay a total brokerage fee for services rendered [to this broker and to another who joined with it in producing the purchaser] amounting to ten (10) per cent of the sale price." Unlike the listing agreement, however, the sales contract makes no mention of what, if anything, is to be paid in the event of a forfeiture. The full commission would amount to $20,500.

The purchasers delivered to the broker a deposit of

$21,000, which the latter then held as agent for the owner.[1] In accordance with its customary procedure, the broker placed the deposit in an escrow account.

Although settlement was to be held "on or before 60 days from the date" of execution, that event never came to pass. Within the 60-day period, the purchasers balked because they claimed to have been advised by county authorities that there was some difficulty with the hotel license. To the extent that any such problem ever did exist, the impediment was removed by action of the seller well within the time required to settle. An effort by the seller to effect the settlement in May was aborted when the purchasers did not appear in their attorney's office, where it was to have been held. It was rescheduled for June, but the purchasers again failed to appear. Prior to either of these prearranged settlements, the purchasers had demanded the return of their deposit, but the broker refused, insisting that the sales contract was enforceable. After the purchasers failed to appear for the rescheduled settlement, the seller attempted to declare a forfeiture, and accordingly made a demand for the deposit upon the broker.

Faced with these conflicting claims and uncertain of what it should do, the broker retained the deposit in its escrow account. Ultimately, in January 1972, it filed an action for declaratory relief against the seller and the purchasers in which it prayed for a declaration that the sales contract was enforceable, and that it be authorized to satisfy payment of its commission from the $21,000 deposit; or that it be awarded a judgment therefor "against the party found to be responsible" for its payment. A demurrer to the declaration on behalf of the purchasers was sustained on the ground that the suit did not allege "such a cause of action as to entitle [the broker] to any relief under the Declaratory Judgment Act." The seller had merely filed an answer to the original declaration contending essentially that since the

---

1. Although the contract was silent on this point, the deposit was paid to and retained by the broker without objection from either the seller or the purchasers.

purchasers had defaulted, she was entitled to one-half of the deposit being held by the broker. She sought no affirmative relief, however, by a pleading directed at the purchasers.

Having been granted leave to do so, the broker filed an amended declaration against the same parties seeking a recovery of the full commission against the seller in accordance with the listing agreement, and damages from the purchasers for tortious interference with the contractual rights of the broker. The seller again filed an "answer" which amounted to a plea of the general issue, but initiated no affirmative claim against the purchasers. The latter, however, filed another demurrer, which was sustained without leave to amend in May 1973 on the ground that the broker had "failed to set forth sufficient facts to constitute any legal cause of action against [the purchasers.]"

Some time later — in January 1974 — the purchasers sought an injunction against the broker in this case for the return of the $21,000 deposit. Significantly, although a party, and having been served with a copy of the various papers relating thereto, the owner offered no resistance to this effort; nor did she otherwise attempt to press her own affirmative claim to any portion of the deposit. The broker, however, did assert such a claim both in its own right and on behalf of the owner. This proved to be unsuccessful, and the trial judge — without the benefit of a hearing — signed an order, providing no inkling of his reasons, which required the broker to return the entire deposit to the purchasers.

Ultimately, the action brought by the broker against the owner came on for trial. Only one witness testified at that proceeding, a salesman employed by the broker; indeed, the record is silent on whether the owner was even present in the courtroom.[2]

In its final resolution of this conflict, the court found that the purchasers had defaulted on the sales contract and that the seller had attempted to forfeit the deposit, but that the

---

2. By this time, she had moved to California. Although there is no "hard" evidence, there are intimations in the record that she had by then resold the property to another purchaser.

broker had prevented a forfeiture by refusing to turn the deposit over to the owner. The court thus concluded that the broker had waived its right to a commission by breaching its fiduciary relationship with its principal in not complying with her demand for the deposit.

On appeal, the broker contends that it is entitled to the full commission, under Maryland Code (1957, 1973 Repl. Vol.) Art. 21, § 14-105,[3] and that it did not waive its right to a commission or breach its fiduciary duty to its principal.

At the outset, it should be noted that even absent a provision for forfeiture of the deposit in the sales contract, the seller is ordinarily entitled to retain the deposit when the buyer defaults, provided, of course, that a forfeiture has been declared, *Chasanow v. Willcox,* 220 Md. 171, 177-78, 151 A. 2d 748 (1959). As we said in *Quillen v. Kelley,* 216 Md. 396, 401-02, 140 A. 2d 517 (1958):

> "There can be little doubt that it was the common-law rule, which has been very generally followed and generally prevails today, that where the vendee of real property makes a part payment on the purchase price, but fails to fulfill the contract without lawful excuse, he cannot recover the payment if the vendor be ready and willing to perform his part of the contract, even though the vendor may have made a profit by reason of the default. *Great United Realty Co. v. Lewis,* 203 Md. 442, 446, 101 A. 2d 881. And *this is true whether or not the contract contains a forfeiture clause.* 31 A.L.R.2d p. 96, § 17. This rule has been followed in Maryland during the course of years with a long line of decisions." (emphasis added).

We then observed that the vendee may be entitled to a return of the deposit if it can show that the amount retained exceeds the damage sustained by the vendor; but that "where the down payment is no more than 10% such proof is

---

**3.** Presently recodified as Code (1974) § 14-105 of the Real Property Article.

improbable." *Id.* at 406. In any event, there being no such showing in the case before us, it is clear that the seller was entitled to forfeit the deposit.

The broker claims that the statute rather than the sales contract governs here, and that it is therefore entitled to the full commission because, in the words of § 14-105, it "procure[d]" a purchaser who "enter[ed] into a valid, binding, and enforceable written contract . . . in terms acceptable to the employer." Thus, it should prevail regardless of "whether . . . the contract entered into [was] actually performed." The answer to this contention is found in *Chasanow v. Willcox, supra.* In that case, the sales contract provided that should the purchaser default, the seller was to allow the broker one-half of the deposit as compensation. The Court concluded that "[s]ince these are substitutional provisions, affecting the time of payment, source and amount of the compensation to which the broker would be entitled, the statute has no bearing on a decision of this case." *Id.* at 176.

Similarly, the listing agreement here is a "special agreement to the contrary," rendering the statute inapplicable to this case, since it provides that the broker shall receive one-half of the deposit as its commission should the deposit be forfeited. Moreover, since the trial judge found that the seller attempted to forfeit the deposit, the forfeiture provision of the listing agreement was operative, and the broker is entitled to one-half the deposit, $10,500, and not the full commission.

This much is virtually conceded by the owner. She contends, however, that the broker waived its right to one-half the deposit, much less the full commission, by breaching its fiduciary duty to her. She points to the refusal of the broker to release the deposit to her upon her request; and its institution of legal proceedings against the purchasers, without her consent, which ultimately led to the return of the deposit to the purchasers. She relies upon *Goss v. Hill*, 219 Md. 304, 149 A. 2d 10, 69 A.L.R.2d 1239 (1959), to support her claim that the broker waived its right to a commission by returning the deposit to the purchasers.

Code (1957, 1972 Repl. Vol.) Art. 56, § 227A, applicable to real estate brokers, provides in relevant part:

"(a) In any case in which a licensee hereunder is entrusted with, or receives and accepts, or otherwise holds, deposit monies or other trust monies, of whatever kind or nature, or instruments representing the same, such monies or instruments, *in the absence of proper written instructions to the contrary*, shall be expeditiously deposited in a bank account maintained by the broker as a separate account for funds belonging to others, and said funds shall be retained in such account until the transaction involved is consummated or terminated, *or until proper written instructions have been received* by the broker directing the withdrawal and other disposition of such funds, at which time all such funds shall be promptly and fully accounted for ɒy the broker. . . ." (emphasis added).

In addition, the Real Estate Commission of Maryland has been delegated the power to enact regulations and a code of ethics, which licensees of the Commission must follow. Section 224 (u) specifically empowers the Commission, by appropriate procedure, to suspend or revoke the license of a broker "[v]iolating any provision of a regulation or of the code of ethics theretofore adopted by the Commission." [4] Article 9 of the Code of Ethics of the Real Estate Commission, adopted May 16, 1967, provides:

"In accepting employment as an agent, the licensee pledges himself to protect and promote the interests of the client. This obligation of absolute fidelity to the client's interest is primary, but it does not relieve the licensee from the obligation of

---

4. This subsection was amended to so read, effective July 1, 1972, subsequent to the actions complained of in this case. Prior to the amendment, § 224 (u) read "[v]iolating any provision of the code of ethics theretofore adopted by the Commission."

*dealing fairly* with all parties to the transaction." (emphasis added).

Regulation 11 of the Real Estate Commission, adopted in its current form in August 1968, states:

> "Where a licensee has custody or possession of money belonging to others, in the absence of *proper written instructions from the parties involved in the transaction* to the contrary, such funds shall not be intermingled with funds belonging to the licensee but shall be deposited and retained as required in a non-interest bearing escrow account clearly designated as containing funds held for others." (emphasis added).

Whatever duties are placed on the broker by these various provisions need not be decided in this case. It is, in any event, understandable that faced with competing claims for the deposit from the purchasers and the seller, and cognizant of these various provisions referred to above, the broker would be uncertain how to proceed. It was therefore entirely appropriate that it retain the deposit in an escrow account while petitioning the court for instructions. Such a course of action clearly did not prejudice the seller, for she was entitled, as a party to the action, to litigate her rights fully.

Neither was it a breach of duty by the broker to the owner to return the deposit to the purchasers. It took this step only after the court had ordered it to do so. Significantly, since the owner was a party to the injunction proceedings, she was afforded ample opportunity to press her claim to the forfeited deposit. By failing to do so, she effectively waived that claim, and literally acquiesced in the return of the deposit to the purchasers. *Cf. Nat. School Studios v. Mealey*, 211 Md. 116, 128-29, 126 A. 2d 588 (1956). Indeed, we have great difficulty in understanding why she even stood by idly in the earlier stages of the litigation instead of then filing a crossclaim against the purchasers. Had she pursued either of these remedies, let alone both, it is quite likely that on the

strength of her claim that the purchasers had defaulted — which the court adopted despite her absence from the trial — she would have been awarded the entire deposit, subject to a claim of one-half thereof by the broker.

In short, this case does not come within the rule of *Goss v. Hill, supra.* There, in returning the forfeited deposit to the buyer without the consent of the seller, the broker was acting in a manner which could not be "sustained as an exercise of good faith and discretion." 219 Md. at 309. In contrast, under the circumstances of the present case, the broker acted in a reasonable manner, and was merely complying with an order of court.

Consequently, the broker is entitled to a commission equal to one-half the deposit from the seller — $10,500.

> *Judgment for appellee reversed; judgment entered against her in favor of appellant in the sum of $10,500; appellee to pay costs.*