## PRINCE GEORGES PROPERTIES, INC. *v.* ROGERS

[No. 140, September Term, 1974.]

*Decided July 29, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Orie Seltzer*, with whom was *Richard E. Painter* on the brief, for appellant.

*Samuel Intrater* for appellee.

O'DONNELL, J., delivered the opinion of the Court.

This is another action by a real estate broker, Prince Georges Properties, Inc., the appellant, for a commission from the seller, Harry L. Rogers, the appellee, under a contract for the sale of real estate where the sale was never consummated.

On February 28, 1973 Tyrone H. Brown and his wife, Barbara (the Browns), submitted a written offer to purchase for $31,000 a dwelling house located at 2408 Fairhill Drive in Suitland, Maryland, owned solely by Harry L. Rogers. On March 3, 1973 Rogers accepted the proposal submitted by them and executed a contract under which the premises, except for the inclusion of certain unrelated items, was to be sold "AS IS."

The clauses of the contract, on a printed form used by Mike Casey Realty, which are pertinent to the present controversy are:

"10. SETTLEMENT. Within 30 days from date of acceptance hereof by the Seller, . . . . If the

*Purchaser shall fail* to make full settlement, the deposit herein provided for *may be forfeited at the option of the Seller,* in which event the Purchaser shall be relieved from further liability hereunder unless the Seller notifies the Purchaser and the Agent(s) in writing within 30 days from the date scheduled for settlement of his election to avail himself of any legal or equitable rights, other than the said forfeiture, which he may have under this contract. *In the event of the forfeiture of the deposit, the Seller shall allow the Agent(s) one-half* thereof as a compensation for his services, said amount not to exceed the amount of the full brokerage fee. . . ." (Emphasis supplied.)

* * *

"22. AGENCY. The Seller recognizes Mike Casey, Realtor, *and P.G.P. 50/50* as the Agent(s) negotiating this contract and agrees to pay a brokerage fee for services rendered amount [*sic*] to "6%" of the sale price. This fee *is earned when this contract becomes binding upon the Purchaser and Seller. Failure or inability of the Seller to perform shall not release the Seller from liability for the brokerage fee. The party making settlement is hereby authorized and directed to deduct the aforesaid brokerage fee from the proceeds of the sale and pay the same* to the agent(s). The *entire deposit shall be held by Mike Casey* and shall be placed in an escrow account in accordance with the real estate license law." (Emphasis supplied.) [1]

By the terms of the agreement, a $3,000 earnest money deposit made by the Browns was to be held by Mike Casey [Realty] "to be applied as part payment of the purchase or settlement." Receipt of the deposit was acknowledged by a salesman for "Mike Casey Realty."

---

1. The broker, "Mike Casey," trades as the real estate brokerage firm of Mike Casey Realty, Inc. "P.G.P." refers to Prince Georges Properties, Inc.

In connection with the completion of the transaction the Browns made a loan application to Cameron-Brown Company for a first deed of trust in the amount of $27,900 which was approved conditioned upon the completion of certain repairs to the premises, including electrical work (apparently to comply with provisions in the Prince George's County Code). When the parties arrived for the scheduled settlement on April 27, 1973 a dispute arose concerning the responsibility for the repairs specified as conditions for the loan authorization. The Browns refused to go through with the settlement unless Rogers would pay for the designated repairs. Since the property had been sold "AS IS" Rogers individually and through his counsel refused to pay for the specified work. Over a period of several hours the Browns and Rogers, without compromising, firmly adhered to their respective positions and the settlement was never held.

On December 27, 1973, Prince Georges Properties, Inc., in its own name filed suit in the District Court against Rogers. It claimed $1,860 (six per cent of $31,000), alleging that to be the real estate commission earned by it and "Mike Casey Realty."[2] Rogers, in accordance with Maryland District Rule 302, filed his Notice of Intention to Defend and pursuant to District Rule 343 c filed an Election of Jury Trial. The District Court was thereby deprived of jurisdiction and the case was transferred to the Circuit Court for Prince George's County for trial. *See* Maryland Code (1974), Courts and Judicial Proceedings Article § 4-302.

When the case came on for trial before a jury (Judge William B. Bowie presiding) the appellee, Rogers, testified that he had taken no action to forfeit the deposit made by

**2.** In neither the District Court nor in the Circuit Court did Harry L. Rogers challenge the right of Prince Georges Properties, Inc. to sue in its own name even though it alleged that the commission had been earned jointly by it and "Mike Casey Realty." *See* Cearfoss v. Wolfinger, 195 Md. 49, 54, 72 A. 2d 763, 765 (1950) where the Court said: "A contract with several persons for payment to them of a sum of money is a joint contract, and all payees have a joint interest therein, so that no one can sue alone for his proportion." No issue has, however, been raised concerning the propriety of the procedure invoked and it appears that any objection which Rogers may have had was waived. *See* Maryland Rule 323 a (8), Eastham v. Young, 250 Md. 516, 243 A. 2d 559 (1968) and McCormick v. Church, 219 Md. 422, 149 A. 2d 768 (1959).

the Browns nor had he ever instituted any proceedings against them.

At the conclusion of all the evidence in the case and upon a renewal of Rogers' Motion for Directed Verdict (*see* Maryland Rule 552) the trial court, out of the presence of the jury, in a dialogue with counsel made inquiry as to "whatever happened to the $3,000?" Counsel for Rogers responded that he had "no idea;" counsel for the appellant stated that "[a]s a result of the seller's failure to go through with the settlement, the deposit was returned to the purchasers who filed suit, obtained a judgment which is now under appeal, for damages because the seller wouldn't go through with the settlement at that time. The entire deposit, since it was not forfeited by the seller, was returned in toto in its entirety to the purchasers."

Counsel agreed with the court that the "only real issue in the case was whether the broker had waived his right to sue the seller for his commission by returning the deposit to the purchaser," that upon the undisputed facts there was no issue to be resolved by the jury and that the case had devolved into an issue of law. Judge Bowie then discharged the jury and requested memoranda from counsel. Thereafter in an opinion and order of court Judge Bowie held that the trial court was not bound by a lower court decision giving judgment in favor of the Browns against Rogers for a breach of the contract, since that decision was on appeal. Upon an "independent study of the evidence" the court found that since the premises were sold "AS IS," there was no requirement on the part of the seller to pay for the electrical work demanded, that it was the responsibility of the purchaser to pay such charges, and found as a matter of law that "the failure to go forward with the settlement was the fault of the purchaser."

The trial court ruled that since the settlement failed "due to the fault of the purchaser" Clause 10 of the agreement was applicable and that Clause 22, which was controlling when settlement was successful, or unsuccessful "because of the seller's inability to perform," was upon the facts inapplicable.

Upon the authority of *Goss v. Hill,* 219 Md. 304, 149 A. 2d 10 (1959) the trial court found that the plaintiff-appellant had returned the $3,000 deposit to the purchaser without the consent of the owner which eliminated the source of the commission and "constituted a waiver of the right to demand a commission from the defendant (appellee)."

From a judgment in favor of the appellee, Rogers, for costs, Prince Georges Properties, Inc. in its direct appeal here urges that we overturn the result. It contends that the trial court was in error in granting the Motion for Directed Verdict "upon information not in evidence" and that under the terms of the contract as well as under the provisions of Code (1957, 1973 Repl. Vol.) Art. 21, § 14-105,[3] it was entitled to the full commission claimed.

In *Salisbury Beauty Schools v. State Board of Cosmetologists,* 268 Md. 32, 300 A. 2d 367 (1973), in connection with an affirmative representation by appellants' counsel in the trial court that there was "no dispute as to any material facts," we stated:

> "The actions of an attorney within the scope of his employment are binding upon his client under the ordinary principles of agency. *McGinnis v. Chance,* 247 Md. 393, 399-400, 231 A. 2d 63, 67 (1967); *Bob Holding Corp. v. Normal Corp.,* 223 Md. 260, 164 A. 2d 457 (1960); 7 C.J.S., *Attorney and Client,* § 79 (1937); and 7 Am.Jur.2d, *Attorneys-at-Law,* § 100 (1963). This is particularly true concerning the stipulation of counsel in open court. See *Posko v. Climatic Control Corp.,* 198 Md. 578, 84 A. 2d 906 (1951); citing *Bloom v. Graff,* 191 Md. 733, 737, 63 A. 2d 313, 315 (1949); 9 *Wigmore, Evidence* (3d ed.), § 2594; 2 *Jones, Evidence* (2d ed.), pp. 1759, 1761." 268 Md. at 45-46; 300 A. 2d at 376.

Such an admission by counsel becomes a substitute for

---

**3.** Previously codified in Maryland Code (1957) Art. 2, § 17 and presently codified in Maryland Code (1974), Real Property Article § 14-105.

evidence. *See* 9 J. Wigmore, Evidence §§ 2588-90 (3d ed. 1940).

The appellant, in urging error, seeks solace from the language in the lower court opinion that "[a]lthough not in the record, it was related to the court by plaintiff's attorney that the plaintiff returned the deposit to the purchasers without the consent of the defendant as provided for in paragraph 10. The plaintiff objects on the grounds that this is not in evidence."

It overlooks, however, the further statement by the lower court that "it would order further testimony to substantiate this representation" if it felt necessary but that "any additional evidence would merely confirm the statement of counsel" and that "[i]n the absence of such evidence, the Court could take the inferences posed in the defendant's reply memorandum; namely, the fact that a contract was signed and a deposit was given to the realtor leads to the conclusion that the realtor still holds the deposit. Under either interpretation, the realtor's contention is meritless." [4]

Although appellant attempts to draw a distinction semantically between "evidence introduced at the trial, as opposed to facts which were introduced at the trial," we hold that when appellant's counsel, in a dialogue with the court, upon inquiry as to the status of the $3,000 deposit, stated unqualifiedly that it was in its entirety returned to the purchasers, this fact became binding upon it the same as if it had been elicited by testimony.

In *Goss v. Hill, supra,* the contract, in language similar to that contained in the one here involved, provided that the commission shall "be due and payable upon the signing of this contract;" it similarly provided as does the subject agreement that the deposit should be held until "settlement hereunder is made" and that it would be "forfeited" if the purchaser fails to make settlement in accordance with the terms of the agreement; the broker, the seller's agent, returned the deposit to the purchasers without any

---

4. If the realtors, as agreed, had retained the deposit in escrow, they would have possessed the fund from which their claim could have been satisfied without having to sue Rogers for the asserted commission.

instructions from the sellers to do so — in fact, after the seller declined to forfeit. In that case, Judge Prescott, for the Court stated:

> "The contract specifically provided that the sellers 'agree to pay commission as agreed upon * * *, *same to be due and payable upon the signing of this contract*"; therefore, Code (1957), Article 2, Section 17 has no bearing on the decision of this case. (Emphasis supplied.) The broker, being entitled to her commission upon the signing of the contract and never having been paid, is still entitled to it unless she has waived her right thereto or estopped herself from asserting the claim." 219 Md. at 307-08, 149 A. 2d at 11-12.

* * *

> "[T]he broker, the sellers' agent, deliberately returned to the purchaser a forfeited deposit without any instruction from the sellers to do so. In addition, the broker knew that the sellers were claiming (although erroneously) a portion of the deposit, without liability for the broker's commission. This conduct on the part of the broker was most unusual and cannot be sustained as an exercise of good faith and discretion. The Restatement, *Agency 2d*, Section 402 (1) (e), states, '[a]n agent is subject to liability to the principal for the value of * * * money which he holds for the principal and to the immediate possession of which the principal is entitled * * * if the agent * * * makes delivery of it to a person to whom he is not authorized to deliver it * * *.' We cite the above to emphasize the unusual conduct of the broker in returning to the purchaser the very fund out of which she could have collected her commission, and, yet demanding that the sellers pay the same.

> "We reach the conclusion, as did the Court in *Huttlinger v. Far West Enterprises*, 281 P. 2d 554

(Cal., 1955), that the broker's returning of the deposit to the purchaser constituted a waiver of her right to demand her commission from the sellers. . . ." 219 Md. at 308-09, 149 A. 2d at 12.

In *Chasanow v. Willcox*, 220 Md. 171, 151 A. 2d 748 (1959) the agreement, like the one here under consideration, provided that the seller would pay the broker a commission *to be deducted from the proceeds of sale;* in the event the purchaser should default it was provided, as does the agreement here, that the seller would allow the broker *one-half of the deposit* as compensation for his services to the seller. Before the scheduled settlement the premises being sold under the contract was damaged by fire and because of a "psychological block" against living in property previously damaged by fire, the purchaser refused to consummate the transaction and requested a return of the deposit. The seller refused unless the broker would waive or release his claim for commission. The broker, insisting that the commission had been earned, refused to waive it and requested the seller to forfeit the deposit, but the seller declined. When the purchaser filed a complaint with the Real Estate Commission, the executive secretary "persuaded" the broker that the partial destruction of the house by fire entitled the purchaser to a refund of the deposit and that the consent of the seller was not required.

In holding that the broker, by the return of the deposit, without the consent of the seller, had forfeited his right to the commission, Judge Horney, who delivered the opinion for the Court, stated:

"The purchaser having defaulted, there were no proceeds of sale out of which the broker could recover a commission. The only fund, therefore, out of which the broker could be allowed compensation for his services to the seller under the contract, was the deposit which the broker had retained under the terms of the contract to be split fifty-fifty in case of default and forfeiture. But, when the broker allowed the Real Estate Commission to stampede

him into returning the deposit to the purchaser without first having obtained the approval or consent of the seller, there was then no fund to which the broker could look for compensation if he was entitled to any at that time under the circumstances in this case." 220 Md. at 176-77, 151 A. 2d at 751.

In pointing out that the mere default or breach by a purchaser did not per se operate as a forfeiture, he stated further:

"[I]t appears that the rights of the broker were inextricably tied in with those of the seller. If, when he defaulted, the seller had notified the purchaser of his intent to forfeit the deposit and had thereafter done so as the broker had requested the seller to do, there is no doubt that the seller could have kept the deposit as liquidated damages under the terms of the contract, and the purchaser's right to a refund of the deposit would have terminated. See *Spellman v. Dundalk Co.*, 164 Md. 465, 165 A. 192 (1933); Annotation, 31 A.L.R.2d 8, 37 (1953); 91 C.J.S., *Vendor and Purchaser*, § 139b(1). See also *Asher v. Hull*, 207 Okla. 478, 250 P. 2d 866 (1952). But when the seller — or his broker for him — retains the deposit without forfeiting it . . ., the mere retention of the deposit does not amount to an election to forfeit it. See *Sheffield v. Paul T. Stone, Inc.*, 98 F. 2d 250 (C.A.D.C., 1938). Cf. *Barnette v. Sayers*, 53 App. D.C. 169, 289 Fed. 567 (1923)." 220 Md. at 177-78, 151 A. 2d at 751.

The Court concluded that since the seller did not forfeit the deposit, which only he had the right to do under the contract of sale and since there was no provision requiring the seller to declare a forfeiture if and when a default should occur, the broker was not entitled to any compensation.

In the most recent case of *Mike Casey v. Nathan Jones*, 275 Md. 203, 339 A. 2d 33 (1975), the broker, Mike Casey

Realty, attempted to recover its commission from the purchaser who had made a deposit on a contract for the sale of realty but who had defaulted the contract and whose check (for the deposit) had been dishonored for lack of sufficient funds. The contract there involved was identical to the one here entered into between Rogers and the Browns.

In holding that Casey had no recognizable interest as to entitle him to maintain the suit on the check because there had been no forfeiture of the deposit by the sellers, this Court, speaking through Judge Digges, stated:

> "The reason why the broker cannot succeed in this case can be found in the sales contract. By the terms of that agreement, [Clause 22] the entire . . . earnest money deposit was to 'be held by [the] broker until settlement [under the contract] is made[, at which time] . . . the party making settlement is . . . directed to deduct the [6%] commission from the proceeds of the sale and pay same to said Agent.' Since, as the broker recognizes, the purchaser refused to consummate the transaction, the appellant's entitlement to a full commission, under this contract provision, did not accrue." 275 Md. at 205, 339 A. 2d at 34.

After setting forth Clause 10 in the sales contract — identical to the same clause here involved, it was further stated:

> "With this contract provision [Clause 10] the sellers had available to them, at the time of the buyer's default, an election among remedies. They could exercise their 'option' to 'forfeit' the deposit being held by the broker, in which event the contract purchaser would be relieved from further liability under the agreement; or the sellers could utilize 'any of the legal or equitable rights, other than . . . forfeiture' available to them, provided they notify the purchaser and the broker of this election 'in

writing within 30 days from the date scheduled for settlement.'

"Since this latter election was not made by the sellers within the thirty-day period provided for in the contract, asserting rights to the deposit by virtue of forfeiture is the only means even potentially available to the broker at this point. However, under the terms of this contract, before the appellant, or the sellers for that matter, can establish complete ownership of whatever had been deposited ... the sellers, must as a condition precedent declare a forfeiture. In other words, until the sellers actually forfeit the deposit, the contract vendors or their agent have no owner-ship in, as distinguished from the right of pos-session of the [deposit] ... because the mere default or breach by the purchaser does not of it-self, operate as a forfeiture. *Chasanow v. Will-cox*, 220 Md. 171, 151 A. 2d 748 (1950); *Powers v. House*, 200 Md. 229, 88 A. 2d 555 (1952); *Meinecke v. Goedeke*, 195 Md. 373, 73 A. 2d 445 (1950)." 275 Md. at 206, 339 A. 2d at 35.

As in that case, the appellee, Rogers, did not exercise the option open to him to forfeit the deposit being held by the broker, nor did he invoke "any of the legal or equitable rights, other than the said forfeiture" which were available to him, and thus the appellant had no ownership in the deposit.

We concur in the holding by the trial court that the provisions in Clause 22 were here inapplicable. Although it is provided therein that the full 6% commission "is earned when this contract becomes binding upon the Purchaser and Seller," it is further provided that the "party making settlement is hereby authorized and directed to deduct the aforesaid brokerage fee from the proceeds of the sale and pay the same to the agent(s)." Since no settlement was ever held, there were no proceeds of the sale and the fund designated to be the source of the broker's commission did

not thus come into existence. *See Berman v. Hall,* 275 Md. 434, 340 A. 2d 251 (1975) citing *Prince George's Club v. Carr,* 235 Md. 591, 202 A. 2d 354 (1964), where it was provided that the broker's commission was to be "paid 'at the time of settlement of this contract . . . from the sale proceeds . . .' " and it was held that the language of the contract "made consummation of the sale a condition precedent to the earning of the broker's commissions" and *Chasanow v. Willcox, supra,* where it was similarly provided that the commission "was to be deducted from the proceeds of the sale." *See also Mike Casey v. Nathan Jones, supra.*

It seems clear, considering the provisions in Clauses 10 and 22, that the parties intended the seller to pay the broker's full commission only upon consummation of the sale and from its proceeds at the time of settlement; that if the sale were not consummated because of the seller's default, the seller would be liable under Clause 22 for the full commission, but if the sale were not consummated because of the purchaser's default, the broker, upon a forfeiture by the seller, was to be entitled to one-half of the $3,000 deposit. *See Cohen v. Duclos,* 272 Md. 41, 45, 321 A. 2d 145, 147 (1974).

Since the trial court found, as a matter of law, upon the evidence elicited that "the failure to go forward with the settlement was the fault of the purchaser," Clause 10 was operative in determining the appellant's commission. Although it had no ownership in the deposit, as distinguished from a right of possession, *see Mike Casey v. Nathan Jones, supra,* it terminated whatever right of possession it enjoyed in the deposit when, without any instructions from the seller to do so, it returned the entire deposit to the Browns and thus, under the holdings in *Goss v. Hill, supra,* and *Chasanow v. Willcox, supra,* waived its commission by surrendering up the only fund out of which it could be allowed its commission. *Compare Chas. H. Steffey, Inc. v. Derr,* 275 Md. 121, 338 A. 2d 262 (1975) where the broker returned the deposit to the purchaser pursuant to an order of court to do so in a proceeding in which the seller failed to press her claim to the forfeited deposit

although she had an ample opportunity to do so, and the rule of *Goss v. Hill, supra,* was held to be inapplicable.

Secondarily, the appellant contends that it became entitled to its full commission upon the execution of the sales contract pursuant to the provisions of Code Art. 21, § 14-105 (where the statute was then codified). The statute provides:

> "Whenever, *in the absence of special agreement to the contrary,* a real estate broker employed to sell, buy, lease or otherwise negotiate real or leasehold estates or mortgages, or loans thereon, procures in good faith a purchaser, seller, lessor or lessee, mortgagor or mortgagee, borrower or lender, as the case may be, and the person so procured is accepted as such by the employer, and enters into a *valid, binding and enforceable* written contract of sale, purchase, lease, mortgage, loan or other contract, as the case may be, in terms acceptable to the employer, and such contract is accepted by the employer and signed by him, the broker shall be deemed to have earned the customary or agreed commission, as the case may be, whether or not the contract entered into be actually performed, unless the performance of such contract be prevented, hindered or delayed by any act of the broker." (Emphasis supplied.)

As we recently stated in *Berman v. Hall, supra,*

> "As this Court has pointed out on many occasions, the above-quoted statute 'was passed to settle the question so often raised, as to when, in the absence of a special agreement, the broker was entitled to commissions.' *Brown v. Hogan,* 138 Md. 257, 268-269, 113 A. 756 (1921). And *see Eastern Associates v. Sarubin,* 274 Md. 378, 336 A. 2d 765, 774 (1975); *Wyand v. Patterson Agency,* 271 Md. 617, 623, 319 A. 2d 308 (1974); *Snider Bros., Inc. v. Heft, supra,* 271 Md. at 416; *Ricker v. Abrams,* 263 Md. 509, 517, 283 A. 2d 583 (1971); *Sanders v.*

*Devereux,* 231 Md. 224, 231, 189 A. 2d 604 (1963); *Schapiro v. Chapin,* 159 Md. 418, 424-425, 151 A. 44 (1930). However, as the language of the statute makes clear, where the parties enter into an agreement specifying a different time when the right to a brokerage commission accrues, the agreement and not the statute is controlling. 'The issue then becomes the parties' intent under that agreement.' *Snider Bros., Inc. v. Heft, supra,* 271 Md. at 416. *See also Chas. H. Steffey, Inc. v. Derr,* 275 Md. 121, 338 A. 2d 262 (1975); *Cohen v. Duclos,* 272 Md. 41, 45-46, 321 A. 2d 145 (1974); *Wyand v. Patterson Agency, supra,* 271 Md. at 623-624; *W. C. Pinkard & Co. v. Castlewood,* 271 Md. 598, 601, 319 A. 2d 123 (1974); *Prince George's Club v. Carr, supra,* 235 Md. at 603; *Chasanow v. Willcox, supra,* 220 Md. at 176; *Goss v. Hill,* 219 Md. 304, 307-308, 149 A. 2d 10, 69 A.L.R.2d 1239 (1959)." 275 Md. at 437-438, 340 A. 2d at 253.

As was stated in *Chasanow v. Willcox, supra,*

"[T]he statute is applicable only 'in the absence of a special agreement to the contrary,' and, in this case, there were two special agreements, one of which was a substitute for the other. There was an agreement that the seller would pay the broker a commission *to be deducted from the proceeds of sale.* However, in the event the purchaser should default it was understood that the seller would allow the broker *one-half of the deposit* as compensation for his services to the seller. Since these are substitutional provisions, affecting the time of payment, source and amount of the compensation to which the broker would be entitled, the statute has no bearing on a decision of this case. [citations omitted]" (Emphasis in original.) 220 Md. at 176, 151 A. 2d at 750-51.

*See also Cohen v. Duclos, supra.*

Although the broker argues — under the terms of the

statute — that it secured a "binding and enforceable written contract of sale" and that it did nothing "to prevent, hinder or delay the performance of the contract," since the provisions in Clauses 10 and 22 are "substitutional provisions, affecting the time of payment, source and amount of the compensation to which the broker would be entitled," the appellant's reliance upon the provisions of Code Art. 21, § 14-105 is misplaced; there was a "special agreement to the contrary," making the statute inapplicable.

*Judgment of the Circuit Court for Prince George's County affirmed; appellant to pay costs.*