R. W. CRABTREE, Appellant,

v.

BOARD OF TRUSTEES OF IMMANUEL
BAPTIST CHURCH, a corporation,
et al., Appellees.

BOARD OF TRUSTEES OF IMMANUEL
BAPTIST CHURCH, a corpora-
tion, Cross-Appellant,

v.

R. W. CRABTREE and E. C. Johns,
Cross-Appellees.

Court of Appeals of Kentucky.

June 28, 1974.

Frank S. Ginocchio, Lexington, for ap-
pellant and cross-appellee R. W. Crabtree
and cross-appellee E. C. Johns.

Thomas C. Brabant, William B. Martin,
Lexington, for appellees and cross-appel-
lants Bd. of Trustees of Immanuel Baptist
Church and others.

**312**

STEINFELD, Justice.

Appellant R. W. Crabtree, a licensed real estate broker, sued appellees and cross-appellant Board of Trustees of Immanuel Baptist Church (Immanuel) to recover a broker's commission. Crabtree contends that he is entitled to $10,500 as a commission on the contract of sale of the church's property at $210,000, or if it is held that he does not prevail on this claim he is entitled to a commission on a subsequent sale. Immanuel claimed $21,000 in damages from Crabtree and cross-appellee E. C. Johns, a sales representative of Crabtree, the trial court entered judgment denying all claims, from which judgment Crabtree appeals and Immanuel cross-appeals. We affirm.

On July 19, 1961, Immanuel, as seller, Felix Martin, as purchaser, and Crabtree, as realtor, entered into a contract for the sale of the property. Immanuel agreed to execute and deliver to Martin " * * * a good, fee simple title to said property by a deed * * *" 60 days after execution of the contract upon payment of the balance of the purchase price. Pertinent parts of the contract are as follows:

"2. The purchase price to be paid Seller by Purchaser shall be Two Hundred Ten Thousand ($210,000.00) Dollars, to be paid as follows:

(a) Twenty-one Thousand ($21,000.-00) Dollars shall be paid R. W. Crabtree, real estate agent, upon the execution of this agreement and said sum shall be paid to Seller by said real estate agent upon the occasion when the Seller delivers a deed to the Purchaser. In the event the Purchaser violates any provision of this agreement and the Seller is able to transfer a good, fee simple title to said property by a deed, and the Purchaser fails to pay the balance of the purchase price as required of him in this agreement, then said Realtor shall deliver said Twenty-one Thousand ($21,000.-00) Dollars to the Seller and said sum shall be liquidated damages for the breach of the contract.

\* \* \* \* \* \*

6. The Seller hereby agrees to pay R. W. Crabtree, Realtor, five (5%) per cent real estate commission at the time the entire purchase price is paid Seller."

The $21,000 deposit was delivered to Johns, who deposited it in Crabtree's escrow account. On July 25, 1961, Martin, with Crabtree's aid, made a contract to sell the same property to Woodland Avenue Baptist Church (Woodland) for $220,000, of which a deposit of $22,000 was paid to Crabtree to be turned over to Martin when the deed was delivered to Woodland. This contract provided no commission for Crabtree. The deposit was held in Crabtree's escrow account. Without Immanuel's knowledge or consent, Johns returned to Martin his deposit of $21,000, it being understood by Johns (as agent for Crabtree) and by Martin that the second deposit would be held by Crabtree for both contracts of sale.

On September 19, 1961, Immanuel tendered a general warranty deed to Martin. The deed stated that the conveyance was "subject to all easements and restrictions (appearing) of record * * *." Martin declined to accept the deed and to pay the balance of the purchase price because of alleged defects and encumbrances in the title. Martin's attorney proposed an extension of time to cure the defects; there was no absolute rejection of the tendered deed. The trial court found that all defects affecting the marketability of the title were subsequently cured. Crabtree attacks this finding, however, we find it unnecessary to discuss this contention.

On October 17, 1961, Immanuel wrote to Martin that it would request payment of the $21,000 deposit as damages if the sale was not completed by November 6, 1961. Immanuel, on November 7, 1961, sent a letter to Martin informing him that because he had not closed the deal Immanuel had cancelled it. At that time it did not know that the deposit had been returned. It learned of its return the latter part of De-

cember 1961, or the first part of January, 1962. On January 17, 1962, Woodland released Martin from all claims under the contract dated July 25, 1961, and Martin released Immanuel from the contract dated July 19, 1961. Immanuel signed an agreement on January 18, 1962, releasing Martin from all claims arising from the contract dated July 19, 1961. On January 23, 1962, Immanuel contracted to sell a portion of the same property to Woodland for $125,000. Immanuel assumed full responsibility for all claims of Crabtree for a commission arising from the contract of sale between Martin and Immanuel.

■ The trial court concluded, and we agree, that the return of the $21,000 deposit to Martin, without the authorization of Immanuel, constituted a breach of trust. Because of the contractual relations between a real estate broker and his principal, "(a)n obligation of mutual good faith and fair dealing is imposed by law * * *." Odem Realty Co. v. Dyer, 242 Ky. 58, 45 S.W.2d 838 (1932). It should be remembered that the contract between Immanuel and Martin provided that the deposit would constitute liquidated damages recoverable by Immanuel in the event of Martin's default. Later Immanuel insisted that Martin defaulted, but Martin denied that. By returning the deposit, Crabtree put Immanuel into an entirely different position than it was in when Crabtree was holding the $21,000. As we have pointed out, Immanuel later released Martin from the sale and purchase contract. Crabtree "* * * exceeded his authority. His agency was limited and he thus had no implied or apparent authority * * *" to change the arrangement between Immanuel and Martin. Lake Company v. Molan, 269 Minn. 490, 131 N.W.2d 734 (1964). It is stated in 12 Am.Jur.2d, Brokers, Sec. 209, that "* * * where an agreement of purchase and sale gives the seller the right to declare a forfeiture of the purchaser's deposit upon the purchaser's failure to consummate the sale, a broker who returns such deposit to a defaulting purchaser without the seller's authorization * * * may not recover a commission from the seller." Cases stating this rule are collected in Annotation, 69 A.L.R.2d 1244 and in A.L.R.2d Later Case Service. We believe this rule should apply in the circumstances of this case even though Martin may not have been a defaulting purchaser.

■ Crabtree further argues that he procured the purchaser Woodland and if he is not entitled to a fee on the Martin transaction he is entitled to a commission of 5% of $125,000 ($6,250), which was the price of the property sold by Immanuel to Woodland. The trial court found that Immanuel did not employ Crabtree to sell the property to Woodland and did not accept the Woodland offer through Crabtree or his sales agent but that Immanuel was contacted directly by Woodland. Crabtree's claim is without merit.

■ The cross-appellant Immanuel argues that Crabtree, by his return to Martin of the escrowed $21,000, breached his contract and thereby damaged Immanuel to that extent. It is our opinion that the release of Martin by Immanuel waived its right to claim damages from Crabtree.

The judgment is affirmed on the appeal and on the cross-appeal.

All concur.

JONES, J., files a separate concurring opinion.

JONES, Justice (concurring).

For the reasons stated in the majority opinion, I concur in the result, and for the same reason as is stated in the opinion. However, because of the significance of the issues raised, I think it is important to state in more detail, the facts, the relationship of the parties, and the issues presented.

This action was filed by appellant, R. W. Crabtree (Crabtree), a licensed real estate broker, against the Board of Trustees of Immanuel Baptist Church (Immanuel), to recover a broker's commission. The property involved consists of a main church edifice and eight structures used for Sunday School purposes, located and fronting on Woodland Avenue, East High Street and Ransom Avenue in Lexington, Kentucky.

Appellant Crabtree contends that he is entitled to a commission of 5 per cent, amounting to $10,500, on the contract of sale of the entire above-mentioned property, at $210,000; or a commission of 5 per cent, amounting to $6,250, on the subsequent sale and conveyance of a *portion* of above-mentioned property.

Cross-Appellant, Board of Trustees of Immanuel Baptist Church, claims $21,000 in damages which is alleged it would be entitled to as liquidated damages.

Pursuant to the direction of the trial court this matter was referred to the Master Commissioner to hear and determine the issues. The Master Commissioner held extensive hearings and read voluminous depositions on behalf of the parties after which he made extensive and detailed findings of fact and conclusions of law. The trial court adopted the Master Commissioner's findings and a judgment was entered dismissing the appellant's complaint and the counterclaim of appellee.

The facts show that on July 19, 1961, Appellee Immanuel, as seller, Felix Martin, as purchaser, and Appellant Crabtree, as realtor, signed a contract for the sale of the before-mentioned land. A deposit of $21,000 was paid on July 25, 1961, to E. Clay Johns, agent for Crabtree, who deposited the money in Crabtree's escrow account.

Immanuel agreed to execute and deliver a general warranty deed of merchantable title to Martin sixty days after execution of the contract, upon payment of the agreed consideration, $210,000, of which the deposit was a part. The contract provided that the deposit was to be liquidated damages to the seller if the purchaser violated the contract and if the seller was able to offer "good fee simple title." The contract further provided that the seller would pay Crabtree 5 per cent of the purchase price "at the time the entire purchase price is paid to seller."

When the deposit was paid, Martin made a contract to sell the same property to Woodland Avenue Baptist Church (Woodland) and with Crabtree as realtor, on July 25, 1961. The purchase price was $220,000, of which a deposit of $22,000 was to be paid to Crabtree, then to be paid to the seller, Martin, when the deed was delivered. The balance of the purchase price was due sixty days after the contract was signed. This second contract allowed no commission to Crabtree. The deposit of $22,000 was held by Crabtree in his escrow account.

At the time the second deposit ($22,000) was delivered to Crabtree, Johns returned to Felix Martin, purchaser, his deposit of $21,000, it being understood by Johns (as agent for Crabtree) and by Martin, that the second deposit would be held by Crabtree in escrow for both contracts of sale. Appellee Immanuel had no knowledge of this return of the $21,000.

On September 19, 1961, Immanuel tendered a general warranty deed to Martin. The property contained a portion of a 20-foot alley; and the deed stated that the conveyance was "subject to all easements and restrictions [appearing] of record. . . . " Martin declined to accept the deed and to pay the balance of the stipulated price because of alleged defects in the record title, including restrictions on alienation, and an easement for an alley. Martin's attorney proposed an extension of time to cure defects; there was no absolute rejection of the tendered deed. All defects except general residential restric-

tions and the easement were subsequently cured. Immanuel explained to Martin and his attorney that parts of the alley had been closed for over fifteen years, that they had acquired title to all property abutting the only portion of the alley which remained open, and that, therefore, the easement had ceased to exist.

On October 17, 1961, Immanuel wrote to Martin that it would request payment of the $21,000 deposit as damages if the sale was not completed by November 6, 1961.

Immanuel signed an agreement on January 18, 1962, releasing Martin from all claims arising from the contract dated July 19, 1961. On January 17, 1962, Woodland released its seller Martin from all claims under the contract dated July 25, 1961. By a contract dated January 17, 1972, Martin similarly released Immanuel under the contract dated July 19, 1961.

On January 18, 1962, the newly formed Underwriters of Immanuel Baptist Church [Underwriters] contracted to sell a portion of the Immanuel property to Woodland for $125,000. The appellee Immanuel also was a party to the sale. In the agreement the two appellees (Underwriters and Immanuel) expressly assumed full responsibility for all claims of Crabtree as to a commission arising from the contract of sale between Immanuel and Martin.

Thus Crabtree's rights must be determined under the Immanuel-Martin contract. The ultimate question presented is whether the failure to consummate the contract was a result of Immanuel's failure to offer a marketable title or whether the failure resulted from Crabtree's return of the $21,000 deposit.

The trial court concluded, and I agree, that the return of the deposit to the purchaser Martin without the knowledge of the seller Immanuel constituted a breach of trust as to the seller, for whom he had held the first deposit. By the return of the first deposit, Johns removed from the purchaser Martin one of the principal motivations to consummate the contract and damaged the seller's interests by reason of the contract provision that the deposit should constitute liquidated damages recoverable by the seller Immanuel in the event of the default of Martin.

I further agree with the trial court's conclusions that the restrictions in the previous deeds were unenforceable, but that even if the restrictions were enforceable, they were only of such a nature as would be expected in residential neighborhoods and *would not* render the title unmarketable. The parties must be held to have realized at the signing of the contract that such restrictions would be encountered.

However the question as to the 20-foot alley is somewhat more serious. The deeds do not show easements as to the alley. Nowhere is a deed to be found wherein the description of a lot *includes* the alley. This court held, in Cohen v. Board of Trustees, Ky., 276 S.W.2d 26 (1955), that the alley in question was of "private nature" and was intended by the subdivider to be used only by and for the benefit of owners of lots abutting the alley. On September 19, 1961, date of the tender of deed pursuant to the first contract, Immanuel was owner of all land abutting that portion of the alley which is material.

This court held in Funk v. Whitaker, 314 Ky. 204, 235 S.W.2d 675 (1950) that closure of a road under adverse claim for more than fifteen years is sufficient to extinguish a private passway acquired by either grant or prescription.

When appellant, Crabtree, returned the first deposit of $21,000 any rights which he might have had to a commission were forfeited.

Crabtree further argues that he procured the purchaser Woodland and if he is not entitled to a fee of $10,500, he is entitled to receive a commission of 5 per cent of

$125,000 ($6,250.00) which was the sale price of that portion of the property sold by Immanuel to Woodland. However, the record reveals that Immanuel Underwriters and Immanuel did not accept any offer through Crabtree or his agent but were contacted by Woodland directly, having had previous contacts with Woodland. Thus, there is no reason to allow Crabtree's claim.

The Cross-Appellant, Immanuel, argues that Crabtree, by his return of the $21,000 held in escrow to Martin, breached his contract and thereby damaged Immanuel's interests to the extent of the loss of $21,000 in liquidated damages. I am of the opinion however, that the signing of the release as to Martin, by Immanuel, estops this claim and constitutes a ratification of the default.