MAXWELL, J.,
for the Court:
¶ 1. Michael Whalen sought specific performance or, alternatively, damages for breach of contract, relating to a land-sale agreement he attempted to broker between Gregory Bistes Jr. and the Bradshaw . Family Limited Partnership. The chancellor granted summary judgment in Bistes’s favor and found that Whalen’s undisclosed dual-agency representation of both Bistes and the Partnership made delivery ineffective and rendered the contract unenforceable. The chancellor also held that because Whalen lacked a real-estate license while acting as a realtor and brokering the land acquisition, he entered court with unclean hands and could not seek equity. Based on Whalen’s violation of Mississippi’s real-estate-licensure laws and his failure to act with the heightened scrutiny required in dual-agency relationships, we find no manifest error in the chancellor’s judgment and affirm.
FACTS
¶ 2. Whalen approached Bistes on behalf of the Partnership seeking to purchase a parcel of land in Long Beach, Mississippi, owned by Bistes and Gay Bistes Palmisa-no. On April 25, 2003, Bistes offered to sell the property and signed an “Agreement to Purchase and Sell” on behalf of himself and Palmisano. The agreement had been prepared by Whalen and proposed that Bistes sell the land to the Part *292 nership for $84,800. The Partnership had to accept the terms of the agreement and deposit a $5,000 promissory note with Bistes by May 1, 2003. The contractual language also provided for deposit of the note with the seller’s agent. Though the agreement did not identify who Whalen represented in the transaction, the contract required Bistes pay Michael Whalen Realty Investment a six-percent commission “if sale is consummated.”
¶ 3. Whalen presented the contract to Tom Bradshaw, who on April 30, 2003, on behalf of the Partnership, deposited a $5,000 note with Whalen. Though the contract contained a May 1, 2003, deadline for acceptance, Whalen neither informed Bistes of the Partnership’s acceptance nor mentioned the delivery of the note until May 10, 2003.
¶ 4. On May 10, Whalen visited Bistes in Slidell, Louisiana, and told Bistes the contract was signed. But Bistes claimed the contract was void and unenforceable since he had not received a signed acceptance or the promissory note by the May 1 deadline. Whalen informed the Partnership of Bistes’s position that the Partnership had not timely accepted the terms of the land-sale agreement. But the Partnership instructed Whalen to proceed with the closing. The Partnership also directed Whalen to record the contract, which he did on May 12, 2003. Several weeks later, Bistes was notified by mail of a June 27, 2003, closing date. Bistes did not respond or attend the closing.
¶ 5. On July 1, 2003, Bradshaw mailed a letter to Bistes purporting to assign the Partnership’s rights under the contract to Whalen. Whalen claims this assignment entitled him to specific performance of the contract. On July 8, 2005, Whalen filed a lis pendens claim in the Harrison County Chancery Court.
¶ 6. The chancellor granted summary judgment in Bistes’s favor, which Whalen now appeals.
STANDARD OF REVIEW
¶ 7. “This Court reviews summary judgments de novo.” Point S. Land Tr. v. Gutierrez, 997 So.2d 967, 975 (¶ 18) (Miss.Ct.App.2008) (quoting Stallworth v. Sanford, 921 So.2d 340, 341 (¶ 5) (Miss.2006)). Summary judgment is proper where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). When a motion for summary judgment is made and supported, “an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e). In determining whether the trial court properly granted summary judgment, we view the evidence in the light most favorable to the non-moving party. Gutierrez, 997 So.2d at 975 (¶ 18) (citing Moss v. Batesville Casket Co., 935 So.2d 393, 399 (¶ 17) (Miss.2006)).
DISCUSSION
I. Contract and Dual Agency
¶ 8. It is undisputed Whalen acted as an agent for the buyer — the Partnership. Whalen also admitted during his deposition he had acted as the seller’s (Bistes’s) agent and as a dual agent. Though he claims a dual agency exists, Whalen admits he never informed Bistes of the dual-agency relationship, nor did he request that Bistes execute a dual-agency acknowledgment. Further, the contract at issue does not state who Whalen represented in the land transaction.
*293 ¶ 9. Mississippi Code Annotated section 73-35-35 (Rev.2008) authorizes the Mississippi Real Estate Commission to adopt rules and regulations governing real-estate business conducted in Mississippi. The Commission requires that an agent involved in a dual-agency arrangement ensure both parties explicitly acknowledge the dual relationship on a form provided by the Commission. Code of Miss. Rules 50 025 001-10, Mississippi Real Estate Commission Rule IV.E.3(c)(3) (2004) (emphasis added). And dual representation by realtors is permitted under Mississippi Code Annotated section 73-35-21(l)(e) (Rev.2008) if the dual representation takes place with the full knowledge of all parties. Lane v. Oustalet, 873 So.2d 92, 96 (¶ 16) (Miss.2004).
¶ 10. The chancellor found that “delivery of the contract to Mr. Whalen by the seller was not delivery to the buyer because of Mr. Whalen’s undisclosed dual agency.” To refute this reasoning, Whalen cites a real-estate regulation and argues that the specific requirement that brokers disclose their agency relationships “does not abrogate the laws of agency as recognized under common law[.]” Code of Miss. Rules 50 025 001-7, Mississippi Real Estate Commission Rule IV.E.l (2004).
¶ 11. Under traditional agency law, knowledge and information acquired by an agent transacting the principal’s business is imputed to the principal, even if not communicated by the agent to the principal. Pittman v. Home Indem. Co., 411 So.2d 87, 89 (Miss.1982) (citations omitted). Whalen argues this imputed-knowledge theory should apply equally in the realm of undisclosed dual agencies. Whalen reasons the knowledge he acquired from the Partnership was imputed to his other principal, Bistes. Whalen also argues that because the Partnership accepted the land-sale agreement and delivered the required promissory note to Whalen before the May 1 deadline, the contract became enforceable between Bistes and the Partnership that day. And Whalen contends a fact issue arose as to whether delivery and acceptance were imputed to Bistes, regardless of Whalen’s failure to inform Bistes of the acceptance until after the deadline.
¶ 12. To support this argument, Whalen cites Lane and argues the issue of whether knowledge has been imputed to a principal in a dual-agency case is a question that should have been submitted to the jury. We note, however, that in Lane the supreme court stopped short of creating a bright-line rule imputing knowledge held by a dual agent to either or both principals. Lane, 873 So.2d at 97 (¶ 22). And perhaps most importantly, unlike this case, the Lane court found the real-estate agent had disclosed the dual-agency arrangement and both principals had accepted the dual representation. Id. at 94 (¶ 16). Whalen presents no authority that a valid dual agency may exist in the real-estate context without one of the principal’s knowledge. Nor does he provide precedent that knowledge is imputed from agent to principal in undisclosed dual-agency relationships.
¶ 13. We have previously addressed the standard of care required of a real-estate agent and held:
The standard of care of an agent has been described as “a duty to use the degree of diligence and care which a reasonably prudent person would ordinarily exercise in the transaction of his own business.” More specifically, “a business agent represents that he understands the usages of the business in which he is employed. One undertaking a matter involving special knowledge ordinarily thereby represents that he has the special knowledge required, and un *294 dertakes that, so far as it is necessary to keep in touch with events, he will do so.”
Varnado v. Alfonso Realty, Inc., 16 So.3d 746, 750 (¶ 16) (Miss.Ct.App.2009) (quoting Cavagnaro v. Coldwell Banker Alfonso Realty, Inc., 995 So.2d 754, 758 (¶ 12) (Miss.Ct.App.2008)).
¶ 14. In matters involving a dual agency, the agent must act “with a heightened sense of duty and conduct to assure that he serves both masters’ interests fully.” Id. (quoting Lane, 873 So.2d at 97 (¶ 20)). And an agent may never act to the detriment of his principal. Id. at (¶ 18) (citing Lee Hawkins Realty, Inc. v. Moss, 724 So.2d 1116, 1119 (¶12) (Miss.Ct.App.1998)).
¶ 15. Traditional agency principles suggest Whalen’s failure to disclose the nature of his dual representation renders the contract voidable at Bistes’s election:
Where an agent undertakes to act for both parties to a contract without their knowledge of and consent to the dual agency, and the nature of the duties of the agent requires the exercise of judgment and discretion, the dual representation is contrary to public policy and the contract is voidable at the election of either principal....
3 Am.Jur.2d Agency § 238 (2002). The right to void the contract applies “regardless of whether the principal suffered an actual injury.” Id. And in the context of an agreement to sell realty on another’s behalf, “[ujnless both principals know of the dual agency at the time of the transaction, the agent cannot recover a commission from either.” • 101 Am.Jur. Trials 1 § 8 (2006).
¶ 16. Though the “Agreement to Purchase and Sell” does not reflect who Whalen represented in the venture, it is undisputed that Whalen never admitted the true nature of his dual relationship to Bistes. Further, we find the quasi-straw assignment from which Whalen now seeks to benefit to the detriment of his former principal offends public policy. To sponsor this purported assignment, we would be forced to turn a blind eye to the supreme court’s mandate that a dual agent must “serve[ ] both masters’ interests fully” and never act to the detriment of a principal. Lane, 873 So.2d at 97 (¶ 20); see also Moss, 724 So.2d at 1119 (¶ 12) (citing Century 21 Deep S. Props., Ltd. v. Corson, 612 So.2d 359, 368 (Miss.1992)).
¶ 17. Considering the heightened fiduciary duties associated with dual representation and drawing from established agency principles, Bistes had the right to void the contract based on Whalen’s undisclosed dual agency. Thus, we find no manifest error in the chancellor’s refusal to find a breach of contract or order specific performance.
II. Unclean Hands
¶ 18. Whalen failed to address the clean-hands doctrine in his brief. But it is apparent from the record that Whalen was not a licensed real-estate broker at the time he set out to arrange the land transaction between Bistes and the Partnership. Mississippi law provides that:
[I]t shall be unlawful for any person, partnership, association or corporation to engage in or carry on, directly or indirectly, or to advertise or to hold himself, itself or themselves out as engaging in or carrying on the business, or act in the capacity of, a real estate broker, or a real estate salesperson, within this state, without first obtaining a license as a real estate broker or real estate salesperson as provided for in this chapter.
Miss.Code Ann. § 73-35-1 (Rev.2008).
¶ 19. The chancellor found Whalen violated Mississippi’s mandatory licensure *295 requirements by acting as a real-estate broker -without a valid license. And, thus, he reasoned Whalen could not seek relief in a court of equity. “It is well established that those seeking relief in equity must come to court with clean hands” and that “the failure to do so may result in the refusal by the court to grant a remedy.” Houston v. Willis, 24 So.3d 412, 421 (¶ 31) (Miss.Ct.App.2009) (citing Thigpen v. Kennedy, 238 So.2d 744, 746 (Miss.1970)). These equity-based notions comport with Mississippi Code Annotated section 73-35-33(1) (Rev.2008), which directs that:
No person, partnership, association or corporation shall bring or maintain an action in any court of this state for the recovery of a commission, fee or compensation for any act done or services rendered, the doing or rendering of which is prohibited under the provisions of this chapter for persons other than licensed real estate brokers, unless such person was duly licensed hereunder as a real estate broker at the time of the doing of such act or the rendering of such service.
¶ 20. Whalen does not and cannot dispute that he violated Mississippi law when he posed as a licensed broker and sought a commission from the real-estate deal. And we find no fault with the chancellor’s reliance on deeply rooted equitable maxims in refusing to enforce the contract or award damages for the alleged breach.
III. Attorney’s Fees
¶ 21. Bistes claims Whalen’s appeal is frivolous and seeks attorney’s fees. Mississippi Rule of Appellate Procedure 38 allows this Court to “award just damages and single or double costs to the appellee” if we find an appeal is frivolous. The inquiry turns on “whether a reasonable person would have any hope for success.” Hards v. Harris, 988 So.2d 376, 380 (¶ 16) (Miss.2008). While Whalen’s arguments lack merit, we do not find them frivolous. Thus, we do not find sanctions appropriate.
¶ 22. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.